## DE VRIES v. ALSEN CEMENT CO. OF AMERICA et al.

(Circuit Court of Appeals, Second Circuit. May 21, 1923.)

No. 290.

Corporations ⊙⟳566(6)—Wage claim of sales agent of New York corporation held not entitled to preference; "Employee;" "Workingman."

A claim against a New York corporation for wages due a sales agent is not entitled to preference over general creditors, under Labor Law N. Y. § 9, giving such preference to wages of the employee, in view of section 2, defining employees as mechanics, workmen, or laborers, or under General Corporation Law, § 261a, as added by Laws 1921, c. 22, giving a preference to the wages of employees, but which did not take effect until after a receiver had been appointed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employee; Workingman.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Julius De Vries against the Alsen Cement Company and another. From an order denying the claim of complainant against defendant company for priority of payment, he appeals. Affirmed.

The following is the report of Special Master E. Henry Lacombe:

Claims against Alsen Company for preference in payment. There are four claims:

Louis Feingold......................................................... $   803.00
Edward L. Geoghan...................................................... 1,000.00
Julius De Vries....................................................... 4,200.00
Frederick Stevenson................................................... 1,800.00

The amounts of these several claims are not disputed; the only question is whether they are entitled, in whole or in part, to preference in payment above general creditors. They may be most conveniently disposed of by first summarizing each claim separately, next discussing the propositions of law which have been raised in reference to them, and then applying the conclusions reached as to the law applicable to the several claims.

### Claim of Julius De Vries.

He entered the employ of the company June 1, 1919, as a salesman; his title then being New England sales manager. In May, 1920, his territory was increased, so as to cover also the metropolitan territory, including export matters. He was to be paid a certain amount per month, and, depending upon the amount of showing he could make as to cement sold, a substantial additional sum at the end of the year 1920. It is not disputed that the balance due him under this contract of employment is $4,200. Besides effecting sales of cement, the claimant handled some other matters, freight matters and such things.

In response to a question by the master asking claimant to state exactly what he did when his employment began, as New England sales manager, he replied: "At that time there did not seem to be much effort required to sell cement, as it was to keep the trade in line. It was a seller's market. There was a great demand for cement, and it required the utmost tact and diplomacy, I consider it, to handle correctly, so that they would not start proceedings against the company, as many of them had contracts. Besides the contracts, the phone was steadily ringing, they wanted to know why they did not get cement, and it was my business to see that they did not bother Mr. Reiss. I was acting as a sort of buffer, to keep them satisfied."

Besides selling cement in New England and the metropolitan district, he was obliged to adjust any complaints that were received regarding the quality of cement; he saw complainants and adjusted their complaints. He also went to labor unions and endeavored to secure help to keep the plant going; went also to Camp Dix and talked with foreign laborers returning from Poland, and endeavored to induce them to come to the plant. They were very short of labor. Mr. Reiss asked him to do that. Later in the year, when the company needed financial assistance, he made trips to several acquaintances and endeavored to raise money; this at his own suggestion, with the approval of Mr. Reiss. Claimant continued in the employment down to the date of receivership.

With regard to the routing of shipments by rail, there were at times a great shortage of cars, and there were embargoes; so he went to New Haven to talk with railroad authorities, trying to get permission for cars to move. Although claimant had general charge over all selling arrangements for the New England and metropolitan districts, he could not promise to deliver a car of cement on his own authority, without getting Mr. Reiss' permission. Claimant was at the New York office on Forty-Second street, which was the headquarters of both the New England and metropolitan districts.

We are not dealing here with claims against a public service corporation, such as a railroad company, the property of which, under a creditor's bill has been taken over by a receiver appointed by the court. In such cases payment may be made by the receiver of moneys due for materials or services supplied during a certain period prior to receivership, where the indebtedness was incurred to maintain the operation of the property. Such claims are in a special class; the preference given to them is not accorded by any statutory provision; it arises by reason of a special equity, the reasons for which will be found set forth in Penn. Steel Co. v. N. Y. City Railway Co. (D. C.) 208 Fed. 182, affirmed 216 Fed. 458, 132 C. C. A. 518. None of the authorities cited in any of the briefs which deal with railroads have any bearing upon the question here presented, where the corporation gets out cement, mills it, and sells it; therefore they need not be here referred to.

The United States Bankruptcy Act (section 64, par. 4, Comp. St. § 9648) accords a preference in payment to "wages due workmen, clerks, traveling or city salesmen, or servants, which have been earned within three months before the date of the commencement of proceedings, not to exceed $300 to each claimant." This, however, is not a proceeding in bankruptcy, and the provisions of that act do not apply.

The estate of this insolvent corporation, which was engaged in getting out, milling, selling and shipping cement, is being administered in liquidation by a receiver appointed under a creditor's bill to which no defense was interposed. The suit was brought in the federal court because of diversity of citizenship, but the court will dispose of all questions of priority of payment in the same way that a state court would dispose of them; that is, in conformity with the statutes of the state and the authoritative decisions of the state courts construing such statutes. Gay v. Hudson River Elec. P. Co. (C. C.) 178 Fed. 499. We may first enumerate the provisions of statute cited in the briefs or found by the master.

### The Labor Law.

This statute (Laws 1921, c. 50) passed March 9, 1921, expressly repealed in section 474, the older Labor Law (chapter 36, Laws 1909) which had itself repealed the original Labor Law (chapter 415, Laws 1897). The act of 1909 contained the following:

"Sec. 9. Upon the appointment of a receiver of a partnership or of a corporation organized under the laws of this state and doing business therein, other than a moneyed corporation, the wages of the employees of such partnership or corporation shall be preferred to every other debt or claim."

The act of 1921 omitted this clause and contains no equivalent of it. Presumably, the Legislature concluded that the disposition of assets by receivers was already sufficiently provided for by existing provisions of

statute. Although this section 9 was repealed with the complete text of the Labor Law of 1909 by the repealing clause of the act of 1921 (section 474), it may reasonably be assumed that it applies in proceedings for the appointment of receivers begun, as this one was, prior to the date of repeal, March 9, 1921. The same Labor Law of 1909, however, contains the following clause:

"Sec. 2. *Definitions. Employee.* The term 'employee,' when used in this chapter, means a mechanic, workingman or laborer who works for another for hire."

Precisely the same definition is found in the original Labor Law (chapter 415, Laws 1896) as is also the above-quoted provision for preferential payment (chapter 415, § 8, Laws 1896).

### Stock Corporation Law.

Reference is also made in the briefs to the Stock Corporation Law (chapter 61, Laws 1909; Consol. Laws c. 59).

"Sec. 57. *Liabilities of Stockholders to Laborers, Servants or Employees.* The stockholders of every stock corporation shall jointly and severally be personally liable for all debts due and owing to any of its laborers, servants or employees, other than contractors, for services performed by them for such corporation."

### Partnership Law.

Another reference in the briefs is to the Partnership Law (chapter 23 of the Laws of 1921), as follows:

"Sec. 71-a. *Payment of Wages by Receivers.* Upon the appointment of a receiver of a partnership the wages of the employees of such partnership shall be preferred to every other debt or claim."

### Debtor and Creditor Law.

In the Debtor and Creditor Law—chapter 17, Laws 1909 (Consol. Laws, c. 12), as amended and renumbered by Laws 1914, c. 360, § 8—there is an article regulating proceedings in the case of general assignments by debtors for the benefit of creditors. In that article there now appears the following section:

"Sec. 22. *Wages and Preferred Claims.* In all distribution of assets under all assignments made in pursuance of this article, the wages or salaries actually owing to the employees of the assignor or assignors at the time of the execution of the assignment for services rendered within three months prior to the execution of the assignment, not exceeding $300 to each employee, shall be preferred before any other debt."

### General Corporation Law.

In the General Corporation Law (chapter 28, Laws 1909; Consol. Laws, c. 23), there is a section (261) regulating the order of payment by receivers of a corporation as follows: (1) Debts due to the United States and debts entitled to a preference under laws of the United States. (2) Debts owing as guardian, executor, administrator, or trustee. (3) Judgments to the extent that they are a lien on real estate. (4) All other creditors.

This section as it then stood certainly gave no preference to employees but on March 3, 1921, the General Corporation Law was amended by chapter 22, Laws 1921, which inserted a new section, as follows:

"Sec. 261-a. *Payment of Wages by Receivers.* Upon the appointment of a receiver of a corporation organized under the laws of this State and doing business therein, other than a moneyed corporation, the wages of the employees of such corporation shall be preferred to every other debt or claim."

With several different "Consolidated Laws," each containing provisions as to preference in payment, and with frequent amendments, repeals, and re-enactments of such laws, in whole or in part, it is not surprising to find a large number of decisions of the state courts bearing upon this subject of preference in payment. Nor is it surprising to find that these decisions are not in entire accord with each other. Instead of endeavoring, from

an examination of all the authorities, to reach some theory as to what is the "general policy of the state" as to the protection of employees' claims for wages, it seems better to deal with these concrete cases concretely. Thus we may first determine which one (or more) of the sections in these acts covers the case of these four employees, or of one or other of them. Next it may be determined whether such section is so explicit as to leave no room for construction. Should it be found that the section is vaguely expressed, the decisions may be consulted to see if they have given the section some definite construction.

Obviously section 71–a of the Partnership Law does not apply to this case, because it deals only with the wages of employees of a partnership, and the Alsen Cement Company was not a partnership. The section (71–a). was a new one, inserted March 3, 1921, by chapter 23, Laws 1921, as an amendment of the then existing Partnership Law (chapter 408, Laws 1919), which contained no provision at all about preference in payment.

Nor does section 22 of the Debtor and Creditor Law (chapter 17, Laws 1909) apply because that section is confined to the distribution of assets when there has been a general assignment for the benefit of creditors. There has been no such general assignment here.

Nor does section 57 of the Stock Corporation Law apply, since it is concerned only with the personal liability of stockholders to laborers, servants, or employees. No such liability is asserted here.

### General Corporation Law.

Next to be considered is the General Corporation Law (chapter 28, Laws 1909), as it stood on January 31, 1921, when this suit was begun and the United States District Court took possession of the property by the receiver whom it appointed on that day. As has been stated above, section 261 of that law regulated the order of payment by the receiver of a corporation. It accorded no preference to the wages of an employee.

There was in existence at the same time the Labor Law (chapter 36, Laws 1909), which was not itself repealed until March 9, 1921 (section 474, c. 50, Laws 1921). This Labor Law of 1909 contained the provision (section 9, quoted supra) that, upon the appointment of a receiver of a corporation (other than a moneyed corporation) organized under the laws of this state and doing business therein, the wages of its employees shall be preferred to every other debt or claim. Literally construed, this would give a wages claim preference over a mortgage lien on real estate; but the Second C. C. A. held contra in Schmidtman v. Atlantic Phosphate Co., 230 Fed. 769, 145 C. C. A. 79. Since the Alsen Company was a corporation organized under the laws of New York and doing business therein, and is not a moneyed corporation, and has had a receiver of all its property appointed, this provision of the Labor Law of 1909, making the wages of its employees a preferred claim, was applicable to it.

It would be next in order to ascertain how broad a meaning should be given to the word "employee" as used in this section, as to determine whether or not it would include these four claimants, or any of them. That question, however, may be quickly and conclusively answered. This same Labor Law of 1909 contains a section (2) which declares that "the term 'employee' when used in this chapter [i. e., the Labor Law, which is chapter 36, Laws 1909] means a mechanic, workingman, or laborer who works for another for hire."

It thus appears that, as the law of the state stood on January 31, 1921, when receiver was appointed no provision of statute gave a preference in payment to the wages of any "employee" of this corporation, but only to its mechanics, workingmen, and laborers. Therefore there is nothing to be gained by considering state court decisions which are concerned with construing the word "employee," nor by discussing the question whether the ordinary meaning of that word is restricted (or enlarged, as one authority substantially holds) by juxtaposition with such other words as "operatives," "servants," or "laborers." We are concerned with three words only, "mechanic," "workingman," and "laborer." The first of these words has a well-recognized and specific meaning. The phrase "a working man" would

mean literally "a man who works" and might be broad enough to cover any kind of work in which he was engaged; a certified public accountant, who makes an elaborate report on a complicated set of books, certainly "works" in preparing it, and, if he were paid $300 a week for his work, he might be held to work for hire. The single word "workingman," however, has a specific meaning; the dictionary gives it as "a laboring man; one engaged in manual labor." No authority has been cited which holds that any one of these three words should be given a meaning broader than it has in common speech, because it happens to be associated with the other two.

On March 3, 1921, chapter 22, of the Laws of 1921 was passed. Its sole provision was the insertion of a new section (261–a) in the General Corporation Law, which new section gave a preference to "the wages of the employees" of a corporation, when its estate is being liquidated by a receiver. It may be noted that this preference is not limited in amount. Should, however, the liquidation be, not by a receiver, but by an assignee under a general assignment for the benefit of creditors, a preference is given to wages due an employee, but the limit of such preference is $300. Debtor and Creditor Law, § 22 (chapter 17, Laws 1909). It is difficult to see why there should be this seemingly arbitrary distinction between the two methods of liquidation.

The statute (chapter 22, Laws 1921) passed March 3. 1921, was no part of the law of the state when receiver was appointed on January 31, 1921. The conclusion is reached that the rights of all creditors, secured and unsecured, were fixed when judgment was entered under the creditor's bill, and the property, in the proceeds of which all creditors were to share, came into possession of the court; that is, on January 31, 1921. Brown v. Massachusetts H. Co., 218 Fed. 769, 134 C. C. A. 47. An individual who, under the law of the state as it then was, had become entitled to preference in payment of his claim, would not lose that preference if it should happen that, just before he received his share of the estate, the statute which had given him the preference was repealed.

The language of the new statute (chapter 22, Laws 1921) indicates that it is looking to the future, not the past. It accords a preference to the wages of an employee "upon the appointment of a receiver." Apparently this "appointment" is something to be made, not something which has been made. If it had been the intent of the Legislature to give such preference in past as well as in future cases, one would expect the section to contain, in addition to the words "upon the appointment of a receiver," the words "or in cases where a receiver has been appointed and not yet discharged." Such words would indicate an intent to apply the new statute to pending as well as future receiverships.

The conclusion is reached that the claimant is not entitled to preference in payment of the amount found due; he is in the class of general creditors.

Joseph A. Walsh, of New York City, for appellant.
Robert P. Lewis, of New York City, for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

PER CURIAM. The opinion of the Special Master, noted above, carefully and comprehensively discusses the question in controversy. We agree with the conclusion, and, in the circumstances, do not find occasion for further comment.

Order affirmed, with costs.